Ronald Poarch sued Alfa Mutual Insurance Company ("Alfa") on April 18, 1997, seeking compensatory and punitive damages on two counts. The first count alleged fraud and the second count alleged bad-faith refusal to pay insurance benefits, hereinafter "bad faith." On October 19, 1998, Poarch amended his complaint to add a third count alleging breach of contract. Alfa's answer to the complaints denied the allegations and asserted the affirmative defenses of release, accord and satisfaction, and waiver and estoppel.
The case was tried before a jury from February 22 through February 25, 1999. At the close of Poarch's presentation of his evidence, the trial court granted Alfa's motion for a judgment as a matter of law pursuant to Rule 50, Ala.R.Civ.P., on *Page 951 
Poarch's fraud count. The case was submitted to the jury on the counts of breach of contract and bad faith; the jury returned a verdict for Alfa on the breach-of-contract count and for Poarch on the bad-faith count and awarded him $6,000 in compensatory damages.
The trial court entered a judgment on the verdict on February 26, 1999. Poarch filed a postjudgment motion for a new trial on the ground that the verdict was inconsistent, on March 1, 1999. Alfa filed a postjudgment motion on March 8, 1999, renewing its motion for judgment as a matter of law as to the counts of breach of contract and bad faith, on the grounds that neither count was supported by the evidence and that Poarch's claims were barred by a full release. The trial court denied both postjudgment motions on April 5, 1999.
Poarch appealed on May 6, 1999, asserting the same ground that he had argued in his postjudgment motion. Alfa cross-appealed on May 18, 1999, asserting the same grounds that it had argued in its postjudgment motion.
The ultimate arguments in both the appeal and the cross-appeal attack the validity of the jury's verdict; we, therefore, begin our consideration of these arguments by noting that the jury's verdict is presumed correct and that this presumption is strengthened when the trial court denies postjudgment motions for a new trial. Charter Hosp. v. Weinberg, 558 So.2d 909, 911 (Ala. 1990). However, settled law requires that the verdict must be consistent.
 "Where a jury verdict is the result of confusion or is inconsistent in law, the trial court should grant a new trial; a new trial is necessary because, once the jury is dismissed, any attempt to reconcile the inconsistencies in a verdict must be based on mere speculation about the jury's intent. A. L. Williams Associates v. Williams, 517 So.2d 596 (Ala. 1987)."
City of Bessemer v. Foreman, 678 So.2d 759, 760 (Ala. 1996). Seealso Clark v. Black, 630 So.2d 1012 (Ala. 1993); Humana Med.Corp. v. Traffanstedt, 597 So.2d 667 (Ala. 1992).
Poarch and his wife, Linda Poarch, were the named insureds under an Alfa homeowner's insurance policy insuring their home in Lauderdale County, Alabama. The policy was a "replacement cost" policy that promised insurance sufficient to replace any covered property that was damaged by fire. A fire seriously damaged the Poarches' home on October 29, 1993. Linda Poarch submitted a claim under the homeowner's policy the next day, and on November 1, 1993, Alfa paid the Poarches $3,000 as an advance payment in compensation for clothing and personal articles; Alfa also located an apartment for the Poarches' temporary residence while repairs were undertaken on their house.
On November 3, 1993, the Poarches met with Kenneth Butler, a local contractor who had been obtained by Barry Youngblood, the Alfa insurance adjuster assigned to the Poarches' claim. Butler had extensive experience in working as a contractor doing repairs under Alfa insurance contracts. The Poarches obtained an estimate from Butler for the cost of repairs, in the amount of $31,377.21. The Poarches testified that they had noticed that the estimate did not include replacement of the walls, and that they had been informed by Butler that Alfa had determined that it would pay only for a much less expensive repainting, rather than replacing, of the walls. They testified that they were never informed that they had any option other than to contract with Butler to perform the repairs, and that they had contracted *Page 952 
with Butler to perform the repairs, on November 4, 1993. On December 22, 1993, Butler issued a supplemental estimate that increased the amount of his original estimate to $34,385.32.
The Poarches testified that during Butler's repairs they had asked the repair crew about the advisability of removing the heat-damaged walls, because another contractor had informed them that such replacement was necessary. The Poarches testified that the workers in the repair crew had assured them that the walls could be repainted and that any defects that might be left would appear within a year and would then be repaired. Butler completed the repairs without replacing any walls, on January 6, 1994, and Alfa paid Butler his final estimate for the repairs.
Poarch testified that about six months after the repairs were completed, he noticed that the paint on the walls was cracking and peeling away and that the underlying walls were cracked. The Poarches contacted Butler, who inspected the walls and informed them that the walls would have to be replaced because they had sustained too much heat damage to allow the paint to adhere. However, Butler denied any responsibility for the necessary repairs.
The Poarches then contacted Alfa and discussed the situation with Kyle Rushing, an adjuster who had taken over the handling of their claim from Youngblood. The Poarches testified that Rushing had initially denied their requests for relief, but that he became willing to discuss possible repairs after the Poarches called Alfa's home office. Rushing confirmed that the sheetrock on the walls in the Poarches' house was too damaged by heat to be repainted. He required the Poarches to obtain three estimates for removing the sheetrock, but he rejected each of the estimates obtained by the Poarches as too expensive. Rushing eventually sent John Johnson, a contractor who had done personal work for Rushing, to the Poarches' home. Johnson submitted the lowest estimate for repairs, $6,777, and the Poarches testified that Alfa informed them that it would pay that amount to whatever contractor the Poarches selected to do the job.
After the Poarches determined that no other contractor would do the work for Johnson's price, they contracted with him to perform the repairs. Johnson informed the Poarches that he was licensed and bonded and would complete the work in approximately four weeks. However, after approximately four months of intermittent work, Johnson left the job incomplete. The Poarches testified that not only were Johnson's repairs unfinished, but that he had damaged the floors and some of the furniture in the house and had damaged the yard. Moreover, he was neither licensed nor bonded.
At the time he left the work, Johnson had been paid approximately $2,800, and Alfa had agreed to pay $500 in addition to the original estimate. The Poarches testified that they had asked Alfa to pay another contractor to complete the work and that Alfa had refused. The Poarches later attempted to use the money remaining on Johnson's contract to complete the work themselves; they were unsuccessful. The Poarches testified that Alfa refused their requests for any further assistance, but finally agreed to pay an additional $1,453 conditioned on the requirement that they sign a release.
After Linda Poarch purportedly executed a general release, Alfa sent a final payment of $1,453.60 by a check payable to her, which she deposited into the Poarches' joint checking account. Ronald Poarch never executed the release. The release is *Page 953 
entitled "RELEASE OF ALL LIABILITY," and states, in pertinent part:
 "I, Linda Poarch, in consideration of the payment to me of $ 90,671.97[1] by the company, receipt of which is hereby acknowledged, do hereby release and forever discharge said company and any other persons, firm, or corporation chargeable with liability for the acts of said company from either expressed provisions or duty implied by law under and by virtue of policy number H285514 and issued to Ronnie Poarch Linda Poarch by said company for injuries or damages sustained by Ronnie Poarch Linda Poarch due to Fire Loss on or about the 29th day of October, 1993, in Lauderdale County, Alabama."
The Poarches testified that they were informed by Alfa and understood that the release was a statement that they would not request any further payment from Alfa concerning Johnson's work. They also indicated that they had informed Alfa that they expected Alfa to fulfill its obligation to complete the repairs on their house.
 I. Poarch's Appeal
Poarch argues that the trial court erred in denying his postjudgment motion for a new trial because, he says, the jury's verdict for Alfa on his breach of contract claim and for Poarch on his bad-faith claim is inconsistent. We agree.
The elements of a bad-faith case were set out by our Supreme Court in National Security Fire Casualty Co. v.Bowen, 417 So.2d 179 (Ala. 1982). The Court stated:
 "[T]he plaintiff in a `bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment without any reasonable ground for dispute. Or, stated differently the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim."
Id. at 183 (emphasis added). See also Chavers v. National Sec.Fire Cas. Co., 405 So.2d 1 (Ala. 1981).
The requirements of Bowen were later interpreted to require that a plaintiff establish that he or she was entitled to a judgment as a matter of law on the underlying claim for breach of contract as a prerequisite for stating a bad-faith claim. SeeBurkett v. Burkett, 542 So.2d 1215 (Ala. 1989); National Sav.Life Ins. Co. v. Dutton, 419 So.2d 1357 (Ala. 1982). This requirement was known as the "directed-verdict" rule, i.e., the plaintiff was required to show that he or she was entitled to a directed verdict on the underlying breach-of-contract *Page 954 
claim in order to state a claim of bad faith.
Most recently, in State Farm Fire Casualty Co. v. Slade,747 So.2d 293 (Ala. 1999), our Supreme Court discussed some fact-specific situations in which the "directed-verdict" rule might not apply. However, Slade presented no situation, and we can envision none, in which an insurer could be guilty of bad faith in refusing to pay a valid claim on an insurance policy while not breaching the policy itself, as required under Bowen. Accordingly, we conclude that the jury's verdict is inconsistent, and that the trial court erred in denying Poarch's motion for a new trial. The judgment is therefore due to be reversed, and the cause remanded for further proceedings. City of Bessemer, supra.
 II. Alfa's Cross-Appeal
Alfa argues that the trial court erred in denying its motion for a judgment as a matter of law on both the breach-of-contract claim and the bad-faith claim because, it says, those claims were not supported by the evidence. Alfa also argues that the jury verdict was not inconsistent, in light of the trial court's instructions, and that Poarch is bound by the release executed by Linda Poarch.
With respect to Alfa's first argument, we note that our standard of review of the trial court's denial of a judgment as a matter of law "is the same standard of review previously applicable to a trial court's denial of a motion for a directed verdict and a motion for a judgment notwithstanding the verdict. . . . " Grand Manor, Inc. v. Dykes 778 So.2d 167,169 (Ala.Civ.App. 1998). Thus, the applicable standard is set out in American National Fire Insurance Co. v. Hughes,624 So.2d 1362, 1366 (Ala. 1993):
 "The standard of review applicable to a ruling on a motion for JNOV is identical to the standard used by the trial court in granting or denying a motion for directed verdict. Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala. 1979). Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982), and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination. Macon County Comm'n v. Sanders, 555 So.2d 1054 (Ala. 1990)."
The Court in Hughes also addressed the evidentiary criteria for a trial court's ruling on a renewal of a motion for a judgment as a matter of law:
 "In ruling on a motion for a JNOV, the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been `substantial evidence' before the jury to create a question of fact. See, § 12-21-12(a), Ala. Code 1975. `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Our review of the record reveals substantial evidence from which the jury could reasonably infer that Alfa did breach its obligation under the insurance contract with the Poarches to provide replacement-cost coverage with regard to the fire damage to their home. Moreover, the record contains evidence from which the jury could infer that Alfa, with knowledge of its obligation to supply replacement-cost coverage *Page 955 
concerning the repair of the damaged walls in the Poarches' home, intentionally refused to provide such coverage. We conclude that the trial court did not err by denying Alfa's motions for a judgment as a matter of law.
Alfa's second argument is that the trial court's jury instruction concerning bad faith did not specifically inform the jury that it was required to find that ALFA breached the insurance contract in order to find Alfa liable for bad faith. Thus, Alfa argues that the trial court's instruction became the "law of the case," see, e.g., Lowe v. Morrison, 412 So.2d 1212
(Ala. 1982), and that the jury's verdict is not inconsistent. We reject this argument, in light of the trial court's instruction to the jury that Alfa would be liable on the bad-faith claim if the evidence showed that it intentionally refused their claim without any legitimate reason for that refusal. That instruction required a determination by the jury that Alfa had refused to honor its obligation under the insurance contract as a prerequisite to a finding that Alfa was liable to Poarch on his bad-faith claim. Accordingly, we conclude that the verdict cannot be justified under the theory of "law of the case." As we noted in the earlier discussion of Poarch's appeal, we can envision no situation in which a claim of bad-faith refusal to pay an insurance claim would not require a preliminary finding that the insurance contract had been breached. Slade, Dutton, and Bowen, supra. That inconsistency requires that the judgment on the verdict be reversed and the cause remanded. City of Bessemer, supra.
Alfa's final argument is that Ronald Poarch was bound by the release signed by his wife. We note that the record shows that Ronald Poarch was aware that his wife had signed the release in order to receive the payment that Alfa offered. We also note that the Alfa employees were aware that Ronald was specifically involved in all aspects of the Poarches' claim, yet those employees imposed no requirement that Ronald sign the release. A release is a contract and is governed by contract law. Gess v.United States, 909 F. Supp. 1426 (M.D.Ala. 1995). Generally, one who is not a party to a contract is not bound by the contract, and this general rule has been applied to hold that one spouse's signature on a contract does not bind a nonsigning spouse.Ex parte Dickinson, 711 So.2d 984 (Ala. 1998); Peterson v. David"Spud" Bishop Contractor, Inc., 547 So.2d 492 (Ala. 1989). As a matter of contract law, only Linda Poarch is bound by her signing in her individual capacity, and there is no indication on the face of the contract that Linda Poarch signed it on behalf of both herself and her husband.
Alfa also argues that Linda Poarch had the apparent authority to bind her husband to the release. However, we note that the determination of apparent authority and the question of agency generally is a question of fact for the jury. Joseph Land Co. v. Gresham, 603 So.2d 923 (Ala. 1992); Brown v. CommercialDispatch Publ'g Co., 504 So.2d 245 (Ala. 1987). We therefore decline to accept Alfa's argument that Ronald Poarch is bound, as a matter of law, by his wife's execution of the release. As to this issue, the trial court's judgment is due to be affirmed.
 III. Conclusion
The trial court did not err in submitting Poarch's claims of breach of contract and bad faith to the jury, nor did the trial court err in refusing to find, as a matter of law, that Poarch had released his claims against Alfa as a result of his wife's execution of the release. However, the jury's *Page 956 
verdict in this case is inconsistent, and the judgment on that verdict must be reversed and the cause remanded for a new trial.
APPEAL — REVERSED AND REMANDED.
CROSS-APPEAL — AFFIRMED.
YATES and MONROE, JJ., concur.
THOMPSON, J., concurs in the result.
CRAWLEY, J., concurs in part and dissents in part.
[1] This figure was Alfa's calculation of the entire amount of compensation paid to the Poarches for all repairs, lost personal property, and living expenses arising from their claim.