PER CURIAM.
On this certiorari review, we consider the question of how to deal with an inconsistent verdict.

Procedural Histoi^y

Ronald M. Poarch sued Alfa Mutual Insurance Company (“Alfa”), alleging breach of contract and bad-faith failure to pay an insurance claim, both claims arising out of Alfa’s handling of a claim Poarch had made under his homeowner’s insurance policy. After a trial in the Lauderdale Circuit Court, the jury returned a verdict in favor of Alfa on the breach-of-contract claim, but in favor of Poarch on the bad-faith claim. It awarded Poarch $6,000 in compensatory damages. The circuit court entered a judgment on that verdict. Both Alfa and Poarch appealed the verdict. This Court transferred the appeal to the Court of Civil Appeals.
The Court of Civil Appeals, finding the jury’s verdict inconsistent, reversed the judgment and remanded the cause. Poarch v. Alfa Mut. Ins. Co., 799 So.2d 949 (Ala.Civ.App.2000). This Court granted Alfa’s petition for certiorari review.
Statement of the Facts[1]
Ronald M. Poarch and his wife Linda Poarch were the named insureds under an *959 Alfa homeowner’s policy insuring their home in Lauderdale County. The policy contained a “replacement cost endorsement,” which, for an additional premium, provided the following additional coverage:
“Loss to the following property shall be settled at replacement cost without deduction for depreciation: [listing of property omitted].”
Thus, the policy was a “replacement-cost” policy, a policy that promised insurance, without deduction for depreciation, sufficient to replace any covered property damaged by fire.
A fire severely damaged the Poarches’ home on October 29, 1993. Linda Poarch submitted a claim under the homeowner’s policy, and on November 1, 1993, Alfa paid the Poarches $3,000 as an advance payment in compensation for clothing and personal articles. Alfa also located a temporary residence for the Poarches and their two children while repairs were being made to their house.
On November 3, 1993, Barry Young-blood, the Alfa insurance adjuster assigned to the Poarches’ claim, arranged for the Poarches to meet with Kenneth Butler, a local contractor. Butler testified at trial that he had had extensive experience in working as a contractor doing insurance repairs for Alfa. The Poarches obtained an estimate from Butler for the cost of the repairs to their home — in the amount of $31,377.21. The Poarches testified that they noticed that the estimate did not include a cost for replacing the walls, and they testified that they were informed by Butler that Alfa had determined that it would pay only for repainting the walls, which would be much less expensive than replacing them.
Butler testified at trial that the walls of the Poarches’ house were “burnt pretty bad” and that he had raised a question with the Alfa adjuster in the beginning about whether the walls could be saved by cleaning, sealing, and painting them or whether the walls needed to torn out and replaced. Butler testified that replacing the walls would cost Alfa about twice as much as cleaning, sealing, and painting them would cost. According to Butler, the Alfa adjuster “wanted us to try to save them.” Butler’s job superintendent, Rick Corum, also testified that the degree of damage sustained to the walls was pointed out to the Alfa adjuster and that the adjuster made the decision to clean, seal, and paint them, rather than to replace them. However, neither Butler nor Corum told Youngblood that the walls could not be saved; they simply informed Youngblood that the walls were “real questionable.”
Poarch testified that Youngblood never informed him or his wife that they had any option other than to contract with Butler to perform the repairs; on November 4, 1993, they contracted with Butler for Butler to perform the repairs. On December 22, 1993, Butler issued a supplemental estimate that increased the amount of his original estimate to $34,385.32. Butler completed the repairs on January 6, 1994, without replacing any walls, and Alfa paid Butler the amount of his supplemental estimate.
Poarch testified that about six months after the repairs were completed he noticed that the paint on the walls was cracking and peeling away and that the walls were cracked. The Poarches contacted Butler, who inspected the walls and informed the Poarches that the walls would have to be replaced because they had sustained too much heat damage to allow the paint to adhere. However, Butler denied any responsibility for making the neces *960 sary repairs. Poarch testified that Butler instructed him to contact Alfa regarding the peeling of the paint and the cracking of the walls.
The Poarches contacted Alfa and discussed the situation with Kyle Rushing, the adjuster who had taken over their claim from Youngblood. The Poarches testified that Rushing initially denied then-requests for relief, but that he became willing to discuss possible repairs after the Poarches had telephoned Alfa’s home office. Rushing confirmed that the plasterboard on the walls in the Poarches’ home had been too damaged by heat to be repainted and that it needed to be replaced. He instructed the Poarches to obtain three estimates for removing and replacing the plasterboard. However, when the Poarch-es submitted their estimates to Alfa, Rushing rejected each of them as too expensive. These estimates included amounts for repairing damage to the hardwood floors and for replacing damaged carpets — every contractor the Poarches contacted indicated that replacing the walls would damage the floors and the carpets and thus would necessitate repairs to the hardwood floors and replacement of the carpets.
After rejecting the estimates obtained by the Poarches, Rushing sent out another contractor, John Johnson. According to Rushing, Johnson had had no previous experience doing insurance repair work for Alfa but had done personal work for Rushing and Rushing had been satisfied with his work. Johnson submitted the lowest estimate for the repairs and the Poarches testified that Rushing informed them that Alfa would pay only that amount to whatever contractor the Poarches selected to do the job. However, Johnson’s estimate did not include any amounts for repairs to the hardwood floors or for replacing carpet. Johnson’s,.written estimate indicated that he was licensed and bonded.
After the Poarches determined that no other contractor would do the work for Johnson’s price, they contracted for him to perform the repairs. Johnson informed them he would complete the work in approximately four weeks.
Although the homeowner’s policy issued by Alfa to the Poarches included coverage for additional living expenses, Alfa’s adjuster denied the Poarches’ request for approval to move out of the home while the repairs were underway. As a result of this denial, the Poarches and their two children arranged to live in one bedroom, part of the living room, and the kitchen of their house while Johnson worked in their house.
However, Johnson did not complete the repairs within four weeks. After approximately four months of intermittent work, Johnson left, leaving the job incomplete. The Poarches testified that Johnson refused to return, telling them that he could not complete the repairs for the amount of his estimate and that he was going to “cut his losses.” The Poarches testified that not only were Johnson’s repairs unfinished, but that he had damaged the hardwood floors and some of the furniture in the house and had damaged the yard. Moreover, after Johnson refused to finish the work, the Poarches discovered that he was neither licensed nor bonded, as he had represented on his contract.
The Poarches testified that they again informed Alfa no other contractor would perform the work for Johnson’s price. The Poarches testified that they asked Alfa to pay another contractor to complete the work, but that Alfa refused. The Poarches later attempted to use the money remaining on Johnson’s contract to complete the work themselves; they were unsuccessful. The Poarches testified that Alfa refused their request for any further assistance, but finally agreed to pay an *961 additional $1,453 conditioned on the requirement that they sign a release.
After Linda Poarch executed a document purporting to be general release, Alfa sent a final payment of $1,453.60 by a check payable to her, which she deposited into the Poarches’ joint checking account. Ronald Poarch never executed the purported release document. The release document, entitled “RELEASE OF ALL LIABILITY,” reads, in pertinent part:
“I, Linda Poarch, in consideration of the payment to me of $90,671.97 by the company, receipt of which is hereby acknowledged, do hereby release and forever discharge said company and any other persons, firm or corporation chargeable with liability for the acts of said company from either expressed provisions or duty implied by law under and by virtue of policy number H285514 and issued to Ronnie Poarch & Linda Poarch by said company for injuries or damages sustained by Ronnie Poarch & Linda Poarch due to Fire Loss on or about the 29th day of October, 1993, in Lauderdale County, Alabama.”
The Poarches testified that they were informed by Alfa, and that they understood, that the release was a statement to the effect that they would not request any further payment from Alfa concerning Johnson’s work. They also testified that they had informed Alfa that they expected Alfa to fulfill its obligation to complete the repairs on their house.
On April 18, 1997, Ronald Poarch sued Alfa, seeking compensatory and punitive damages, alleging fraud and bad faith. He later amended his complaint to add a third count alleging breach of the insurance contract. Alfa answered the complaints, denied the allegations, and asserted the affirmative defenses of release, accord and satisfaction, waiver, and es-toppel.
The case was tried before a jury in the Lauderdale Circuit Court. The court granted Alfa’s motion for a judgment as a matter of law on the fraud claim, but submitted to the jury the breach-of-contract and bad-faith claims. The jury found for Alfa on the breach-of-contract claim and for Poarch on the bad-faith claim, awarding Poarch $6,000 in compensatory damages.
Poarch moved for a new trial on the ground that the jury’s verdict was inconsistent. Alfa renewed its motion for a judgment as a matter of law as to the breach-of-contract and bad-faith claims, on the grounds that neither claim was supported by the evidence and that Poarch’s claims were barred by a full release. The trial court denied both postjudgment motions. Poarch appealed and Alfa cross-appealed.
The Court of Civil Appeals, holding that the verdict was inconsistent, reversed the judgment and remanded for a new trial on the breach-of-contract and bad-faith claims. Judge Thompson concurred in the result. Judge Crawley concurred in that part of the judgment remanding for a new trial on the breach-of-contract claim, but dissented from the order directing a new trial on the bad-faith claim, finding the evidence insufficient to support the jury’s finding on the bad-faith claim. Alfa petitioned for certiorari review, which we granted.

Alfa’s Argument

Alfa argues that the inconsistent jury verdict is easily corrected by striking that portion of the jury’s verdict that it contends is inconsistent with the evidence— i.e., striking the jury’s finding on the bad-faith claim — rather than remanding for a new trial on both claims. Alfa argues that the “uncontradicted evidence ... demonstrates that there was not one single claim *962 made by the Poarches that Alfa did not pay” and that “the plaintiff completely failed to present evidence that Alfa refused to make or delayed in making any payments without a legitimate or arguable reason for such refusal or delay.” Further, Alfa argues that “it is the law in Alabama that where a defendant insurance company pays a substantial portion of a plaintiffs claim, failure to pay another part will not support an action for bad faith.”

The Law on Inconsistent Verdicts

This Court has written:
“Where a jury verdict is the result of confusion or is inconsistent in law, the trial court should grant a new trial; a new trial is necessary because, once the jury is dismissed, any attempt to reconcile the inconsistencies in a verdict must be based on mere speculation about the jury’s intent.”
City of Bessemer v. Foreman, 678 So.2d 759, 760 (Ala.1996). See also Clark v. Black, 630 So.2d 1012 (Ala.1993); Humana Med. Corp. v. Traffanstedt, 597 So.2d 667 (Ala.1992). Accordingly, if the jury rendered an inconsistent verdict in this case, then we must affirm the Court of Civil Appeals’ order directing a new trial rather than attempt to strike some portion of the inconsistent verdict.
In order to establish a breaeh-of-contract claim, a plaintiff must show “(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant’s nonperformance, and (4) damages.” Southern Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala.1995) (citations omitted). The elements of a cause of action for a bad-faith refusal to pay an insurance claim were set out in National Security Fire & Casualty Co. v. Bowen, 417 So.2d 179 (Ala.1982):
“[T]he plaintiff in a ‘bad faith refusal’ case has the burden of proving:
“(a) an insurance contract between the parties and a breach thereof by the defendant;
“(b) an intentional refusal to pay the insured’s claim;
“(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
“(d) the insurer’s actual knowledge of the absence of any legitimate or arguable reason;
“(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer’s intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
“In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.”
Id. at 183 (first emphasis added). See also Chavers v. National Sec. Fire & Cas. Co., 405 So.2d 1 (Ala.1981). Thus, a breach of the insurance contract is an element of a bad-faith-refusal-to-pay claim.
After reviewing the record before us, we see no situation presented in this case in which Alfa could have in bad faith refused to pay the Poarches’ insurance claim without breaching the policy of insurance it had issued the Poarches. Because a breach of the insurance contract is an element of a bad-faith-refusal-to-pay claim, the jury, in order to find in favor of Poarch on the bad-faith claim, must have found that Alfa breached its contract of insurance with Poarch. See Bowen, supra; *963 see also State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 319 (Ala.1999) (“Thus, the jury, in finding State Farm guilty of bad faith, must have found that State Farm had breached the insurance contract.... Thus, the jury inconsistently resolved the same issue in two separate counts, thereby making its verdict inconsistent.”). The verdict in favor of Poarch on the bad-faith claim is inconsistent with the verdict in favor of Alfa on the breach-of-contract claim. “[I]t is clear that the appropriate remedy for the rendition of an inconsistent verdict is not a [postverdict JML]; rather, the appropriate remedy is a new trial.” Slade, supra, 747 So.2d at 319, quoting Luker v. City of Brantley, 520 So.2d 517, 521 (Ala.1987). Accordingly, this Court agrees with the Court of Civil Appeals that the jury’s verdict is inconsistent and that the judgment must be reversed and this cause remanded for a new trial.
The Court of Civil Appeals properly held that both the breach-of-contraet claim and the bad-faith claim should be retried. We reject Alfa’s argument that Poarch presented insufficient evidence to create a jury question on his claim of bad faith. We note that the question whether Poarch presented sufficient evidence on his claim that Alfa intentionally refused to replace the damaged walls in accordance with the terms of the homeowner’s policy is a close one. However, this Court need not resolve that question, because the evidence created a jury question on Poarch’s claim that Alfa intentionally refused to honor the Poarches’ claim for additional living expenses.
It is undisputed that the Poarches’ insurance policy provided coverage for additional living expenses; the Poarches made a claim under this coverage at the time Alfa approved their claim for replacement of the walls. Alfa knew that the estimated time for those repairs was a minimum of four weeks and that the repairs to be made at the Poarches’ house (the removal of walls and plasterboard in numerous rooms), and all related inconveniences would cause a major disruption to their family life.[2]
Poarch presented evidence indicating that Alfa denied the Poarches’ claim for additional living expenses, and the record provides no indication of any reason for this denial. The record contains sufficient evidence to present a jury question as to whether Alfa denied this claim in bad faith. It is well established that this Court will uphold a ruling of the trial court if the ruling is proper for any reason, even one that was not presented to, or considered by, the trial court. Deaton, Inc. v. Monroe, 762 So.2d 840 (Ala.2000).
Finally, we reject Alfa’s far-reaching interpretation of Sexton v. Liberty National Life Ins. Co., 405 So.2d 18 (Ala.1981), cited by Alfa as authority for the proposition that where an insurance company pays a portion of a plaintiffs claim, its failure to pay another part will not support a bad-faith-failure-to-pay action. The Sexton Court merely concluded that, considering the partial payment “in the context of [that] case,” 405 So.2d at 22, there was no basis for a claim alleging bad faith.[3] Id. at 22. Thus, the holding of *964 Sexton was limited to the facts of that case and it does not per se preclude a jury’s consideration of an insured’s bad-faith claim simply because the insurer has paid a portion of the insured’s claim. Under the facts of this case, we hold that Alfa’s partial payment of the Poarches’ insurance claim does not preclude the jury from considering Poarch’s bad-faith claim.
Finally, we take this opportunity to recommend that Instruction 20.37, Alabama Pattern Jury Instructions: Civil (2d ed.1993), the pattern jury instruction for a bad-faith claim, be amended to avoid the recurring confusion now leading to inconsistent jury verdicts on breach-of-contract and bad-faith claims. We believe the confusion could easily be eliminated by adding the following sentence to Instruction 20.37:
“In order to find for the plaintiff on his/her bad-faith count, you must have found for the plaintiff on his/her breach-of-contract count.
No prejudice could result from the court’s giving such an instruction, because the jury currently must find for the plaintiff on the contract claim in order to find for the plaintiff on a bad-faith claim. This sentence, if added to the instruction, will simply provide clear and concise directions to the jury so as to avoid an inconsistency due to oversight or to confusion among the jurors. There is no reason to avoid directly apprising jurors, in words they can understand, of the interrelationship under Alabama law of a breach-of-contract claim and a bad-faith claim.

Conclusion

The Court of Civil Appeals properly reversed the judgment and remanded the case for a new trial on the plaintiffs breach-of-contract and bad-faith claims. The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
MOORE, C.J., and HOUSTON, LYONS, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE and BROWN, JJ., dissent.

. The facts stated here arc essentially those stated in the opinion of the Court of Civil Appeals.

. The extent of this disruption was evidenced in the record. Because Alfa denied their request for additional living expenses, the Poarches, a family of four, were forced to move into their kitchen, one bedroom, and a portion of their living room, with one child sleeping on a sofa for over four months. Additionally, most of their furniture was placed in storage in order to protect it from damage during the repairs.

. To the extent West headnote number 6 (key number 602.2(1)) preceding the Sexton opin *964 ion, as published in Southern Reporter (2d) (see 405 So.2d at 19), indicates otherwise, the headnote does not accurately reflect the contextual limitation of the case.