BRUCE KALLENBERG, as Administrator D. B. N. of the Estate of BELLE KALLENBERG, Deceased, Respondent, *v.* BETH ISRAEL HOSPITAL et al., Appellants, et al., Defendant.

First Department, June 27, 1974.

*Thomas R. Newman* of counsel (*Benjamin H. Siff* and *Daniel E. Siff* with him on the brief; *Bower & Gardner,* attorneys), for Beth Israel Hospital, appellant.

*Richard J. Neulan* of counsel (*Martin, Clearwater & Bell,* attorneys), for Arthur Kirschenbaum, appellant.

*Norman Bard* of counsel (*James E. Hannon,* by *Weinstein, Chayt & Bard, P. C.,* attorneys), for Ralph Adelman, appellant.

*Alfred S. Julien* of counsel (*Helen B. Stoller* with him on the brief; *Julien, Blitz & Schlesinger, P. C.,* attorneys), for respondent.

*Per Curiam.* In this action to recover damages for wrongful death arising out of alleged negligence and malpractice, the defendants, Beth Israel Hospital, Dr. A. Kirschenbaum and Dr. Ralph Adelman, appeal from a judgment in favor of plaintiff, entered upon a jury's verdict against all defendants, in the sum of $55,000 for wrongful death, and $15,000 for pain and suffering.

The decedent, Mrs. Belle Kallenberg, then 55 years of age, died on August 26, 1965, at Beth Israel Hospital, following her third hemorrhage from a cerebral aneurysm. She had been admitted to this hospital on August 19, 1965, as a private patient of the individual defendants, Dr. Adelman, a general practitioner and Dr. Kirschenbaum, a neurosurgeon. Upon her admission it was determined that she was in need of a specific medication to reduce her blood pressure and keep it at a reasonably low level; Naturetin was the drug of choice, and Dr. Adelman undertook the administration of this drug immediately, and it was directed that it be continued to be administered every day in the morning. For some unexplained reason, this drug was never administered to the decedent, although its administration was considered necessary to prepare her for needed surgery by Dr. Kirschenbaum.

On August 22, Mrs. Kallenberg developed symptoms of a recurrence of bleeding, including neurological deterioration. A spinal tap disclosed fresh bleeding and medication was used to reduce her blood pressure, but not Naturetin.

On August 23, Mrs. Kallenberg's condition was grave, and so continued through August 25, with a mounting blood pressure, which went to a critical high of 240 on August 26, at which time Mrs. Kallenberg suffered a final hemorrhage and died at 8:30 A.M.

The gravamen of the complaint and bill of particulars is that the individual defendants, by failure to give the indicated drug of choice, permitted Mrs. Kallenberg to be placed under a course of drug therapy which did not allow her to reach an operable condition; but instead permitted and allowed her condition to deteriorate, and so ultimately she died.

The defendant, Dr. Adelman, conceded at the trial that control of Mrs. Kallenberg's blood pressure by proper medication

meant the difference between life and death and that Naturetin was a critical drug for her. The hospital and the two attending physicians, the individual defendants, were at law responsible for the administration of this drug. The failure to administer this drug of choice was a departure from accepted medical practice and procedure. Plaintiff's experts testified that Mrs. Kallenberg's failure to recover from the bleeding experienced on August 22 was due to the failure to provide her with the medication necessary to reduce her blood pressure so that she could undergo surgery. These experts testified that Mrs. Kallenberg did not reach a stage where nothing further could be done for her until some 72 hours after treatment should have been commenced following the August 22 development. The defendant, Dr. Adelman, admitted knowledge of the fact that Naturetin was not administered, as it should have been for four days preceding Mrs. Kallenberg's death.

On the submission of the case to the jury, the Trial Justice, in an effort to isolate the possible areas of malpractice, submitted a series of five questions, one of which (Item 2) requested the jury to determine whether or not the "Failure to give Naturetin on August 23, 24, 25 and 26" constituted negligence on the part of defendants. The jury's response to this particular question was that it did constitute negligence and its verdict in favor of plaintiff was based solely on the response to this question, numbered 2.

The defendants argued that the failure to give Mrs. Kallenberg Naturetin after her rebleed on August 22 did not cause her rise in blood pressure and the fatal hemorrhage. The dissenting opinion embraces this argument stating: "According to Dr. Lieberman, plaintiff's most prestigious expert, her condition was then terminal and could not be reversed." We do not find that the record sustains either the contentions of the defendants or the conclusion stated in the dissenting opinion.

The record discloses that Mrs. Kallenberg's condition did not become irreversible until some 72 hours after the August 22 bleed. And Dr. Lieberman explicitly testified that the patient could not be considered a terminal case even on August 24, and that a contributing factor to Mrs. Kallenberg's death was the failure to use Naturetin; and that the failure to give Naturetin on August 23, 24, 25 and 26 was a "producing, contributing factor to this woman's death." Dr. Lieberman further testified that "if properly treated, energetically and adequately, the patient still has [would have had] a 20, say 30, maybe 40% chance of survival" if surgery had been undertaken; and that surgery could have been performed, if the proper drugs had

been administered. He also testified that if the proper drugs had been administered, even without surgery, she had a 2% chance of survival.

The question of proximate cause is a jury question, and a jury alone may weigh conflicting evidence and determine the credibility of witnesses and the weight to be accorded expert testimony. On the record before us, it is clear that the jury could find, as it did, that had Mrs. Kallenberg been properly treated with the indicated medication of choice, her blood pressure could have been kept under control, and she might have improved sufficiently, even after August 22, to undergo surgery and make a recovery.

Finally, we find no basis for the view in the dissenting opinion that no award should have been made for conscious pain and suffering after August 22, because there was "no proof or reason to believe that this unfortunate woman was capable of experiencing pain at that time." Dr. Lieberman testified on cross-examination that on August 23 "the patient did come back and even rallied and even was able to talk coherently, and still they did nothing about something surgical." It is the majority view that if the decedent was able to talk coherently, she also had a capacity to suffer conscious pain after August 22, and the jury so found.

Accordingly, we find no reason for disturbing the jury's verdict.

The judgment appealed from should be affirmed, with $60 costs and disbursements to respondent.

STEUER, J. (dissenting). This is an action for wrongful death due to malpractice. The deceased, a woman 55 years of age, was admitted to defendant hospital on August 19, 1965, as a private patient of defendants Drs. Kirschenbaum and Adelman. She had just experienced a hemorrhage due to a cerebral aneurysm of congenital origin. She suffered two hemorrhages while in the hospital and died on August 26, 1965. Plaintiff asserted several specifications of malpractice, some of which were pleaded and some not. The court resolved these claims into five questions which were submitted to the jury. The jury found only that there was malpractice in regard to specification number 2—"Failure to give Nauturetin on Aug. 23, 24, 25 and 26."

In order to understand this finding a more detailed statement of the facts as developed on the trial is needed. An aneurysm is a weakened condition of the wall of a blood vessel. As a result blood may seep or hemorrhage from the vessel into various body

cavities. This had happened to the deceased prior to her admission to the hospital. Successive accidents of this sort are invariably fatal. The condition can be treated surgically. It was plaintiff's initial and primary claim that the failure to operate soon after the deceased's admission to the hospital was malpractice, and this contention was supported by plaintiff's expert. The contention was countered by defendants' claim that the deceased was not operable at that time and the sole hope of recovery was stabilization of her blood pressure at a sufficiently low level for the operative procedure to have a favorable prognosis. Without commenting on the validity of the respective medical contentions, the jury did not find that the decision not to operate deviated from accepted medical practice. In order to reduce the deceased's blood pressure and bring it under control the administration of Naturetin was prescribed. For some reason not specifically explained, no Naturetin was given the deceased after August 22, and it was this failure that was found to constitute malpractice.

The difficulty with the finding was that the failure did not cause her death. On August 22 the deceased suffered a second hemorrhage. According to Dr. Lieberman, plaintiff's most prestigious expert, her condition was then terminal and could not be reversed. It is true that other doctors testified that there was a possibility of the deceased being saved thereafter, but their opinions lacked any substantial support. Furthermore, the administration of Naturetin advocated after August 22 was not the dosage previously administered but a massive injection designed to have a radical effect. This procedure, shown to have dangerous side effects, was one of those embraced in the fifth specification put to the jury — "Events during 12 hours before patient's death" — and rejected by them. It would therefore appear that while the failure to administer Nautretin after August 22 might indicate an attitude, it was not shown to have been the producing cause of the demise.

Additionally, I fail to find any justification whatever for an award for conscious pain and suffering after August 22. There is no proof or reason to believe that this unfortunate woman was capable of experiencing pain at that time.

For these reasons I would reverse and dismiss the complaint.

McGivern, P. J., Markewich, Capozzoli and Macken, JJ., concur in *Per Curiam* opinion; Steuer, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on October 17, 1973, affirmed. Respondent shall recover of appellants $60 costs and disbursements of this appeal.