**Roxie Owen RUFF, et al.,**
**Plaintiffs–Appellants,**

v.

**BOSSIER MEDICAL CENTER,**
**et al., Defendants,**

**Dr. Miguel Mora, Defendant–Appellee.**

No. 90–4800.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1992.

Edmund M. Thomas, Shreveport, La., Richard J. Voelker, Baton Rouge, La., for plaintiffs-appellants.

Lawrence W. Pettiette, Jr., Blanchard, Walker, O'Quinn & Roberts, Shreveport, La., for defendant-appellee.

Before CLARK, Chief Judge, JONES, Circuit Judge and PARKER *, District Judge.**

ROBERT M. PARKER, District Judge:

A medical malpractice claim was brought against Dr. Miguel Mora, appellee, another doctor and Bossier Medical Center in a Louisiana state court. Dr. Mora filed a third party demand against the Veterans Administration (V.A.), an agency of the federal government which owns and operates the V.A. Medical Center in Shreveport, Louisiana, seeking contribution and indemnification. The V.A. removed the suit to federal court. The Louisiana patient compensation fund was later added as a defendant. Prior to trial the Plaintiffs settled with the other doctor, Bossier Medical Center, and the Louisiana Patient Compensation fund.

The Plaintiffs, the family and estate of the late Walter Don Ruff, were suing for damages allegedly caused by the defendants in failing to timely diagnose and treat the decedent's heart attack. Plaintiffs claim that the negligence of the defendants either caused Mr. Ruff's death or resulted in the loss of a chance of survival.

After trial, the Court entered an order dismissing Plaintiff's claim against Dr. Mora and dismissing Dr. Mora's claim against the V.A. The Court found that: (1) Dr. Mora had been negligent in his treatment of Mr. Ruff, (2) Plaintiffs failed to prove that Dr. Mora's negligence caused Mr. Ruff's death, and (3) Plaintiffs failed to carry their burden of proof showing Mr. Ruff's chances of survival "... would more probably than not have been increased to some reasonable degree had Dr. Mora diagnosed his heart problems on May 27, 1984." Plaintiffs appeal from the court's order, bringing three points of error. We AFFIRM.

FACTS

On May 26, 1984, Walter D. Ruff went to the emergency room of the Veterans Administration Hospital complaining of fever, constipation and existing symptoms of anorexia. He was diagnosed as having viral gastroenteritis and was released with direction to drink fluids and take aspirin.

On May 27, 1984, Mr. Ruff went to the emergency room of Bossier City Medical Center complaining of chest pain, shortness of breath, coldness and numbness of his left arm over a two month period and inability to eat the preceding three days. Dr. Mora, M.D., the physician on duty at Bossier City Medical Center, examined Mr. Ruff and conducted routine tests. Dr. Mora was a native of Spain and may have had some difficulty communicating with the decedent. In spite of the symptoms Mr. Ruff complained of, Dr. Mora did not diagnose or rule out cardiac problems. Instead he diagnosed Mr. Ruff as having poorly controlled diabetes and severe osteoarthritis of the spine. Dr. Mora gave him a pain medication and sent him home after consulting with Dr. Forbing, his regular physician, and instructing Mr. Ruff to see Dr. Forbing the next morning.

On May 28, 1984, Mr. Ruff saw Dr. Forbing in his office. Dr. Forbing gave him medication for diabetes and blood pressure and sent him home.

On May 29, 1984, Mr. Ruff was admitted to the V.A. Hospital emergency room and was diagnosed as having suffered a heart attack approximately 72 hours prior to this admission. He was stabilized initially, but died on June 1, 1984.

* District Judge of the Eastern District of Texas, sitting by designation.

** This opinion was concurred in by Chief Judge Clark prior to his resignation from the Court on January 15, 1992.

## STANDARD OF REVIEW

In reviewing the judgment of the trial court, where the action was tried to the court without a jury, the Court of Appeals may not set aside the findings of fact made by the court unless they are clearly erroneous. Fed.R.Civ.P. 52(a). A finding is clearly erroneous when, although there is evidence to support it, the appellate court is convinced on a review of the entire record, that a mistake has been made. *United States v. Oregon State Medical Soc.*, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952).

■ However, conclusions of law made by the district court are not binding on the appellate court and the latter is free to substitute its judgment on the law for that of the court below. *Horn v. C.L. Osborn Contracting Co.*, 591 F.2d 318 (5th Cir. 1979).

## APPELLEE'S DUTY TO DECEDENT

■ Appellants allege that the trial court erred in ascribing to the defendant a duty less stringent than the standard of care required of physicians by La.R.S. 9:2794, which provides:

[T]he plaintiff shall have the burden of proving: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.

Plaintiffs characterize Dr. Mora's duty under this statute as an obligation to "rule out" the possibility that the cause of Mr. Ruff's signs and symptoms was a heart attack. Under the Court's interpretation of the facts, Dr. Mora had a duty to take adequate steps to be certain that he fully understood Mr. Ruff's complaints. We find that the Court's characterization of the duty was correct. The facts presented do not indicate that the doctor failed to make a proper diagnosis or differential diagnosis of the symptoms of which he was aware. Rather, the evidence shows and the Court found that Dr. Mora failed to understand the nature of Mr. Ruff's complaints because of the doctor's limited ability to understand English. However, even if the court's characterization of the duty imposed a higher standard on Plaintiff than was appropriate, the Plaintiff has presented no grounds for reversal of the Court's order because the Court found for the Plaintiff on the issue of breach of duty.

## LOUISIANA DOCTRINE OF LOST CHANCE

The Plaintiffs complain that the District Court imposed an incorrect burden of proof under the Louisiana Doctrine of Lost Chance. The Court found that Plaintiffs did not carry their burden of proving by a preponderance of the evidence that the patient would have had at least a better chance of survival if the negligence had not occurred.

■ The Doctrine of Lost Chance is a principal which has evolved in the common law of Louisiana over a period of many years. A defendant's conduct must increase the risk of a patient's harm to the extent of being a substantial factor in causing the result, but need not be the only cause. *Hastings v. Baton Rouge General Hospital*, 498 So.2d 713 (La.1986). It is not necessary to prove that a patient would have survived if proper treatment had been given, but only that there would have been a chance of survival. *Hastings, supra,* citing *Kellenberg v. Beth Israel Hospital*, 357 N.Y.S.2d 508, 45 A.D.2d 177 (1974). The "substantial factor" in the cause of death language was reiterated recently in *Tabor v. Doctors Memorial Hospital*, 563 So.2d 233 (La.1990). In an action brought by the family of a deceased heart attack victim against a hospital and emergency room physician, the Louisiana Supreme Court articulated the test in another way:

The question is whether the patient's chances of avoiding injury or death had been decreased due to the defendant's negligence, or the Defendant's conduct denied the patient a chance of survival. Even the destruction of less than fifty percent chance of survival is compensable. The Plaintiff must prove such a chance existed and that it was lost as a result of the Defendant's negligence. *Smith v. State, Through the Department of HHR*, 523 So.2d 815 (La.1988).

■ The Court's opinion, after properly stating the doctrine of lost chance of survival and citing to these three cases, adds the following sentence: "This court finds that Plaintiffs have failed to carry their burden of proof in showing that Mr. Ruff's chances of survival would more probably than not have been increased to some 'reasonable' degree had Dr. Mora diagnosed his heart problems on May 27, 1984." Although the court's order refers to increasing the chance of survival by some "reasonable" degree and the case law never uses the word reasonable, we do not find that the court's wording imposed a higher burden on the Plaintiff than the doctrine of lost chance dictates. The language in each case differs slightly. The "substantial factor" language is the common thread among the cases, if there is one to be found. The District Court's reasonable degree language is, if anything, a lighter burden for the Plaintiff to meet than the "substantial factor" test. We find the Court's order did not affect any substantial right of the Plaintiffs. 28 U.S.C. § 2111.

## APPORTIONMENT OF FAULT

■ The Plaintiffs allege that the District Court erred in apportioning fault among the two defendant doctors. The Court did not apportion fault. The Court apportioned the negligence between the two doctors—40% to Dr. Mora and 60% to Dr. Fleming. The Court found the decedent was not at fault for his own death. The Court then made a finding that the negligence proved by the Plaintiffs did not cause Mr. Ruff's death. If, as Appellants are asking, we assign 100% of the negli-

gence to Dr. Mora, it does not change the outcome of the case, given the Court's finding on causation. We find no merit in this point of error.

## CONCLUSION

We AFFIRM the order of the Trial Court.