2002 SD 20

**David JORGENSON and Laura Jorgenson, Plaintiffs and Appellants,**

v.

**Michael J. VENER, M.D., Defendant and Appellee.**

**No. 21896.**

Supreme Court of South Dakota.

Argued Nov. 16, 2001.

Reassigned Dec. 21, 2001.

Decided Feb. 6, 2002.

Daniel R. Fritz, Aberdeen, South Dakota, and James R. Welsh, Bradford, Coenen & Welsh, Omaha, Nebraska, Attorneys for plaintiffs and appellants.

Reed Rasmussen, Julia M. Dvorak of Siegel, Barnett and Schutz, L.L.P., Aberdeen, South Dakota, Attorneys for defendant and appellee.

SABERS, Justice (on reassignment).

[¶ 1.]　David Jorgenson (Jorgenson) developed an infection in his lower right leg as a result of surgery to repair a shattered tibia and ankle. Jorgenson's attending physician, Dr. Michael Vener (Vener), did not discover the infection for approximately three months. Jorgenson sued Vener for medical malpractice under the loss of chance doctrine. The trial court granted summary judgment for Vener, Jorgenson appealed, and we reversed. *Jorgenson v. Vener*, 2000 SD 87, ¶ 24, 616 N.W.2d 366, 373 (*Jorgenson I*). Now, Jorgenson pursues damages for the loss of a ten-fifteen percent chance that he could have saved

his leg from amputation. The trial court granted summary judgment for Vener again, Jorgenson appeals again, and we reverse and remand for trial.

## FACTS

[¶ 2.] On August 16, 1997, while visiting relatives in Wisconsin, Jorgenson jumped from a 7 foot high ledge, landing on a cement sidewalk. The impact shattered his right tibia and ankle. Jorgenson was taken to a nearby hospital where a doctor surgically inserted pins into the fractured bone and stabilized the injury with external fixators. After five days, Jorgenson was released from the hospital and returned home to Waubay, South Dakota.

[¶ 3.] Jorgenson continued treatment with Vener, a Watertown physician specializing in orthopedic surgery. On August 26, about one month after the surgery, Vener noticed some drainage around the pins in Jorgenson's leg and placed him on a week-long course of antibiotics. An open sore of about one and a half inches had developed on Jorgenson's lower right shin.

[¶ 4.] In late October, Jorgenson began feeling feverish. He also noticed drainage and a foul odor coming from the sore on his leg. Vener prescribed another course of antibiotics.

[¶ 5.] On November 10, 1997, Vener removed the external fixator. Approximately two weeks later, Jorgenson again noticed the drainage and foul odor coming from his open sore. This time, however, he could also see a portion of bone at the surface of the wound. Jorgenson immediately contacted Vener, who again prescribed a course of oral and topical antibiotics. Vener also recommended

scheduling an appointment with a doctor in Fargo to determine whether a "free flap" procedure should be done "in order to salvage the limb."

[¶ 6.] Jorgenson opted, instead, to make an appointment at the Mayo Clinic in Rochester, Minnesota. On December 4, he was told that he had two alternatives concerning the treatment of his leg: (1) an attempted bone and skin graft, which would require two years of treatment with a sixty percent chance of success; or (2) an immediate amputation of the lower portion of Jorgenson's right leg. On December 9, 1997, Jorgenson underwent a below-the-knee amputation of his right leg.

[¶ 7.] Jorgenson and his wife subsequently filed a medical malpractice action against Vener for negligently failing to diagnose a chronic infection in the bone and negligently failing to refer Jorgenson to an infectious disease specialist. Jorgenson alleged that Vener's negligence caused the loss of a ten-fifteen percent chance that Jorgenson could have saved his leg.[1]

[¶ 8.] On June 28, 1999, the trial court granted Vener's summary judgment motion on grounds that "the loss of chance doctrine is not compatible with South Dakota Law." As indicated, this Court reversed and remanded the case, for the first time recognizing a cause of action for loss of chance in South Dakota. *Jorgenson I*, 2000 SD 87 at ¶ 17, 616 N.W.2d at 371. On remand, the trial court again granted Vener's summary judgment motion, this time in response to Jorgenson's testimony that, given a ten-fifteen percent increase in his chance to save his leg, Jorgenson stated he would choose amputation. The trial court determined that Jorgenson had "abandoned any chance of saving his leg" by choosing amputation and was not enti-

---

1. Jorgenson's expert, Dr. Mark Rupp, testified that a diagnosis of the infection in October, when Jorgenson presented with a fever, would have increased Jorgenson's chances of saving his leg by ten-fifteen percent.

tled to collect on a loss of chance claim. Jorgenson appeals again and we reverse again.

## STANDARD OF REVIEW

■ [¶ 9.] Our standard of review for summary judgment is well established:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Holzer v. Dakota Speedway*, 2000 SD 65, ¶ 8, 610 N.W.2d 787, 792(quoting SDCL 15–6–56(c)) (citations omitted). Thus, we independently review the record without being bound by the trial judge's factual assessments. *Carpenter v. City of Belle Fourche*, 2000 SD 55, ¶ 6, 609 N.W.2d 751, 756; *Fritzel v. Roy Johnson Constr.*, 1999 SD 59, ¶ 7, 594 N.W.2d 336, 338; *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 7, 580 N.W.2d 606, 609.

[¶ 10.] **WHETHER THE TRIAL COURT ERRED IN DETERMINING THAT JORGENSON'S DEPOSITION TESTIMONY PRECLUDED A CAUSE OF ACTION FOR LOSS OF CHANCE.**

■ [¶ 11.] This Court recognized a cause of action for loss of chance in *Jorgenson I* and reversed the trial court's grant of summary judgment. 2000 SD 87

at ¶ 17, 616 N.W.2d at 371. Vener now argues that Jorgenson is precluded from asserting a cause of action for loss of chance because he testified that, under the circumstances, he would have chosen amputation. Even if that statement were relevant and admissible to determine damages for loss of chance, it would not be sufficient to eliminate genuine issues of material fact.

[¶ 12.] The issue in this case is not whether Jorgenson's deposition testimony negates the possibility of a different outcome precluding his recovery on a loss of chance claim. Rather, the issue is whether Jorgenson should be given the opportunity to prove to a jury the amount of damages he suffered as a result of the doctor's negligence. To uphold the trial court's grant of summary judgment would effectively reverse our first *Jorgenson* decision because it defeats the purpose of adopting the loss of chance doctrine.

■ [¶ 13.] In *Jorgenson I*, this Court stated that "[t]he loss of chance doctrine involves the idea that a doctor, by doing something wrong, has decreased the patient's chance of recovery or survival." *Id.* at ¶ 12 (citing Margaret T. Mangan, Comment, *The Loss of Chance Doctrine: A Small Price to Pay for Human Life*, 42 SDLRev 279, 283 (1997)). A plaintiff may then be entitled to recover damages for this lost chance. Jorgenson has the right to prove the existence and value of his damages to a jury. Article VI § 6 of the South Dakota Constitution guarantees the right to trial by jury. Article VI § 6 provides: "[t]he right of trial by jury shall remain *inviolate* and shall extend to all cases at law without regard to the amount in controversy[.]" (emphasis added). "A jury determination of the amount of damages is the essence of the right to trial by jury[.]" *In re Certif. of Questions of Law: Knowles v. United States*, 1996 SD 10,

¶ 10, 544 N.W.2d 183, 187 (quoting *Moore v. Mobile Infirmary Ass'n,* 592 So.2d 156, 161 (Ala.1991)). Jorgenson should not be deprived of the opportunity to prove the value of such damages simply because of an after-the-fact statement. Accordingly, we reverse and remand for jury trial.

[¶ 14.] GORS, Acting Justice, concurs.

[¶ 15.] AMUNDSON, Justice, concurs specially.

[¶ 16.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, dissent.

AMUNDSON, Justice (concurring specially).

[¶ 17.] The issue in this case is whether Jorgenson had an opportunity for a better result during the time of his treatment by Vener. The New Mexico Supreme Court discussed the lost chance doctrine in *Alberts v. Schultz* and held as follows:

> The injury is the lost opportunity of a better result, not the harm caused by the presenting problem. It is not the physical harm itself, but rather the lost chance of avoiding the physical harm . . . . [t]he causal connection between the negligence and the resultant injury must be medically provable.

> The chance of a better result may be conceptualized as a window of time that existed before the malpractice took place; in that window of time the healthcare provider had an opportunity to timely implement proper medical treatments that would avoid or minimize the occurrence of the injury. Through negligent misdiagnosis, inappropriate therapy, or unnecessary delay, the window of time was closed. The act of malpractice may have immediately shut the window of time, or it may have caused a delay during which the window of time expired. The claim is not for the subsequent injury, but for the fact that it is

now too late to do anything to avoid the injury. Correcting the problem is no longer possible. . . .

> Rather, the patient must present evidence that the harm for which he or she originally sought treatment—the presenting medical problem—was in fact made worse by the lost chance.

126 N.M. 807, 975 P.2d 1279, 1284–85 (N.M.1999).

[¶ 18.] In this case the plaintiff should be allowed to prove that his window of opportunity for a better result was closed due to negligent treatment, which in fact is shown to have made the condition worse. And, therefore, I concur in the majority writing.

GILBERTSON, Chief Justice (dissenting).

[¶ 19.] I respectfully dissent. I would affirm the trial court's summary judgment based on the evidentiary admissions of Jorgenson.

[¶ 20.] Jorgenson has failed to establish proximate cause. In recognizing a cause of action for a loss of chance in *Jorgensen I,* this Court stated "[p]roperly applied, the loss of chance doctrine does not alter or eliminate the requirement of proximate causation. Rather, a plaintiff must still prove by a preponderance of evidence, or more likely than not, that the defendant's actions reduced [his] *chance of a better outcome.*" *Jorgenson I,* 2000 SD 87 at ¶ 17, 616 N.W.2d at 371 (emphasis added). *See also Alberts v. Schultz,* 126 N.M. 807, 975 P.2d 1279, 1287 (N.M.1999) (recognizing loss of chance doctrine but denying claim as plaintiff failed to establish doctor's negligence proximately caused loss of leg). Thus, when a plaintiff affirmatively asserts that he would not have done anything differently had he been given that chance, there is a fatal "gap in the proof as

to proximate cause." *McDaniel v. Ong*, 311 Ill.App.3d 203, 243 Ill.Dec. 729, 724 N.E.2d 38, 44 (1999).

[¶ 21.] For example, in *McDaniel*, the guardians of a developmentally disabled nursing home patient argued that the doctor's negligent failure to timely diagnose the patient's pregnancy resulted in the loss of a chance to obtain an abortion. *Id.* at 42. The court held that, while the doctor's conduct may have been negligent, there was no indication that the plaintiffs would have taken advantage of the medical intervention, namely, an abortion. *Id.* In fact, one guardian testified that an abortion had not even been considered. *Id.* The court stated the facts merely "show that the doctor's actions caused a loss of the chance to *consider* an abortion, not the chance to *obtain* an abortion." *Id.* (emphasis added). Similarly, in *Aguilera v. Mount Sinai Hospital Medical Center*, the plaintiff argued that the doctor's negligent delay in administering a CT scan resulted in the failure to perform surgical intervention. 293 Ill.App.3d 967, 229 Ill.Dec. 65, 691 N.E.2d 1, 6 (1997). The court, however, held the absence of evidence showing the CT scan would have led to the performance of neurosurgery failed to satisfy proximate cause. *Id.* at 6–7. In essence, a plaintiff cannot recover on a cause of action for lost chance when the plaintiff concedes the doctor's negligence never prevented him from actually availing himself of the opportunity to achieve a better outcome.

[¶ 22.] The majority of courts considering loss of chance claims have held that not only does the plaintiff have to prove that the defendant's negligence increased the risk of harm, the plaintiff must also prove that the defendant's negligence was a "substantial factor" in bringing about the ultimate injury.[2] This "substantial factor" test is nothing more than a test for proximate cause. Jorgenson, by his own admission, has shown that the lost chance was not a substantial factor in his undergoing an amputation.

[¶ 23.] Furthermore, Jorgenson did not believe that the possibility of saving his leg, given the length and rigor of the treatment necessary in such an attempt, would have achieved a better result. When asked if he would have changed his mind had he been given a seventy-five percent success rate as opposed to a sixty-percent success rate, Jorgenson testified "Probably not. . . . I don't have 2½ years to be there and I don't want bone grafts, operations, and still probably lose my leg. Plus, it would have been a fused ankle with a rocker bottom shoe, so I would still have been crippled."[3] *See Vaughn v. John*

**2.** *See McBride v. United States*, 462 F.2d 72 (9thCir.1972) (applying Hawaii law); *Jeanes v. Milner*, 428 F.2d 598 (8thCir.1970) (applying Arkansas law); *Delaney v. Cade*, 255 Kan. 199, 873 P.2d 175 (1994); *Scafidi v. Seiler*, 119 N.J. 93, 574 A.2d 398 (N.J.1990); *Aasheim v. Humberger*, 215 Mont. 127, 695 P.2d 824 (1985); *Thompson v. Sun City Cmty. Hosp., Inc.*, 141 Ariz. 597, 688 P.2d 605 (1984); *Thornton v. CAMC*, 172 W.Va. 360, 305 S.E.2d 316 (W.Va.1983); *Jones v. Montefiore Hosp.*, 494 Pa. 410, 431 A.2d 920 (1981); *Thomas v. Corso*, 265 Md. 84, 288 A.2d 379 (1972); *Kallenberg v. Beth Israel Hosp.*, 45 A.D.2d 177, 357 N.Y.S.2d 508 (N.Y.App.Div. 1974).

**3.** The majority suggests that Jorgenson should not be held accountable for his testimony because it was "an after-the-fact statement." The nature of the adversary process, however, relegates all deposition and trial testimony to the category of after-the-fact statements. This testimony is of no less value or weight simply because it is elicited in a deposition. At a minimum, this testimony would be relevant in determining whether Jorgenson breached a duty to mitigate damages. *See, e.g., King v. Clark*, 709 N.E.2d 1043, 1048 (Ind.Ct.App.1999) (holding patient's choice of lumpectomy over mastectomy and refusal to complete all six chemotherapy sessions "contributed as a legal cause to the harm she

*Morrell & Co.*, 2000 SD 31, ¶ 36, 606 N.W.2d 919, 926 (holding plaintiff may not "assert a better version of the facts" than testified to below) (citation omitted). Jorgenson's informed choice interceded to preclude the increase of chance from saving his leg, in effect reducing the chance of a better outcome to zero. *See Alberts*, 975 P.2d at 1285 (holding loss of chance claim exists only where injury could have been avoided, but "[c]orrecting the problem is no longer possible."); *Falcon v. Memorial Hosp.*, 436 Mich. 443, 462 N.W.2d 44 (1990) (holding plaintiff claiming lost chance must prove defendant reduced opportunity of

suffered."); *Borkowski v. Sacheti*, 43 Conn. App. 294, 682 A.2d 1095, 1111 (1996) (recognizing that patient's conduct did not rise to level of contributory negligence but was relevant in determining defendant's level of liability); *Chudson v. Ratra*, 76 Md.App. 753, 548 A.2d 172, 181 (1988) (holding that while patient's failure to follow through with treatment did not rise to level of contributory negligence, it was relevant in determining amount of damages).

4. The determination of causation and damages in a loss of chance case may be done by three different basic methods. The two methods representing the extremes of the spectrum, are the "all or nothing" method and the Restatement (Second) of Torts method. The "all or nothing" method allows recovery only in those cases where the plaintiff proves a better than fifty percent chance of recovery. If the plaintiff is successful, the defendant is liable for one hundred percent of the loss; recovery "is not discounted by the chance that the loss might have occurred even absent the tort." *Wendland v. Sparks*, 574 N.W.2d 327, 331 (Iowa 1998) (quoting Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale LJ 1353, 1365–66 (1981)). If, however, the plaintiff cannot prove a greater than fifty percent lost chance, recovery is precluded entirely.

The majority herein uses the Restatement method, or "any loss" approach to causation, which holds a medical professional "subject to liability to the [plaintiff] for

avoiding harm) *rev'd in part on other grounds*, 467 N.W.2d 25 (Mich.1991). The amputation would have occurred, even in the absence of any negligence by Vener, because Jorgenson believed that he had already achieved the *better* outcome.

[¶ 24.] No matter the approach[4] used for determining proximate cause, one common thread remains: a plaintiff must demonstrate harm by showing the doctor's negligence deprived him of a chance at a better result. Jorgenson's lost chance cannot be valued because of his own testimony that the ultimate injury was not a lost chance of a *better* outcome, but a lost

physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases such harm...." Restatement (Second) of Torts § 323(a). Under this method, the increased risk need not be significant, so long as some harm was caused. This standard of proof is relaxed to the point of being nonexistent.

I would choose to adopt the more moderate and practical "substantial factor" test in reviewing Jorgenson's loss of chance claim. *See Jeanes*, 428 F.2d at 605; *Delaney*, 873 P.2d at 182. This method relaxes the standard of proof without eliminating it. A plaintiff meets the initial threshold by showing that a significant chance of survival or a better recovery was lost. *Id.* at 184. This approach is used not only to determine whether a plaintiff should recover, but also the amount of recovery "based upon what [he] lost by being deprived of the opportunity to receive early treatment and the chance of realizing gain in avoiding physical harm or loss of life." *Jorgenson I*, 2000 SD 87 at ¶ 31, 616 N.W.2d at 374 (Amundson, J., concurring). Liability exposure is apportioned to fault. *See McKellips v. St. Francis Hosp., Inc.*, 741 P.2d 467 (Okla.1987). Thus, Jorgenson could recover for Vener's delayed diagnosis only if: (1) Vener's conduct was determined by the court to have been negligent; (2) that negligent conduct was a substantial factor in bringing about the ultimate injury; and (3) a fifteen percent lost chance is determined by the court to be significant.

chance of a *different* outcome. Jorgenson cites no case law supporting his assertion that a loss of chance claim is compensable without any proof of harm. *See State v. Pellegrino,* 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599 (stating failure to cite supporting authority is a violation of SDCL 15–26A–60(6) and issue is deemed waived) (citation omitted). Accordingly, where the element of proximate cause has not been satisfied, the element of damages cannot be reached.

[¶ 25.] Because Jorgenson testified that the earlier discovery of his infection would not have changed his course of action, I would hold that there can be no recovery for the lost chance in this case. As in *McDaniel,* Jorgenson has merely shown that the doctor's alleged negligence caused the loss of a chance to consider the two-year treatment to try and save his leg at a possible success rate of seventy-five percent as opposed to sixty percent. He has not shown the loss of a chance to actually obtain the treatment. Indeed, he testified that obtaining the treatment was *not* the better result for him. I would not hold that a plaintiff be required to undergo the treatment in order to recover on a loss of chance claim, only that he deem it a possibility at a better outcome and consider it accordingly.

[¶ 26.] It is indisputable that our Constitution provides a litigant the right to have factual issues tried by a jury. But where there is no issue of fact, there is no right to a jury trial. Here, there was no question of fact left for a jury to consider, as Jorgenson's own testimony has already given the answer. Jorgenson's deposition testimony, that he would still choose amputation given an increased fifteen percent chance of success, factually negates the possibility of a better outcome and thereby precludes his recovery on a loss of chance claim. Simply put, Jorgenson testified his

way out of court. Therefore, I would affirm the trial court's decision.

KONENKAMP, Justice (dissenting).

[¶ 27.] With today's ruling, medical patients can refuse remedial treatment and still maintain a viable malpractice suit against their doctors for failing to provide that treatment. If that seems absurd, then read the majority opinion again, for that is exactly what it holds. The plaintiff here can both disclaim a medical remedy and sue for having been denied it. Thus, a patient's own decisions about courses of treatment become wholly irrelevant. The doctor must pay for not giving a patient a choice the patient would never have chosen. The expansion of liability here is breathtaking. Medical malpractice law now becomes a Pickwickian parlor game. There will be compensation for loss, even if only illusory, a product of statistics, conjured up and displayed in so many pixels. All a jury needs to do is count them, and, of course, add dollar signs.