2002 SD 64

**Wayne KRAUSE and Kathy J. Cooper–Krause, Plaintiffs and Appellants,**

v.

**David REYELTS, d/b/a Reyelts Construction, Defendant and Appellee.**

No. 22103.

Supreme Court of South Dakota.

Considered on Briefs April 22, 2002.

Decided June 5, 2002.

Mr. Brad A. Schreiber of Day, Morris & Schreiber, Belle Fourche, for plaintiffs and appellants.

Mr. Jon J. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, for defendant and appellee.

ZINTER, Justice.

[¶ 1.] Wayne and Kathy Cooper–Krause (hereinafter referred to as Wayne, Kathy, or Krauses as the context requires), sued their general contractor, David Reyelts (Reyelts). They claimed Reyelts was directly and vicariously liable for construction defects in their house. Reyelts raised the affirmative defense of release. Reyelts claimed that he was released because Krauses released Reyelts's subcontractor. The trial court agreed and granted summary judgment in favor of Reyelts. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] On March 5, 1993, Krauses entered into a contract with Reyelts for the construction of a home in Rapid City. Reyelts subcontracted with Melvin Geidel Excavation (Geidel) to perform the excavation work on the project. The excavation work included digging the foundation and footings, back filling, and final grading.

[¶ 3.] Construction was completed in August of 1993. About a month later, Krauses noticed heaving and cracking concrete in the basement. In October of 1993, a leaking sewage pipe was discovered under the driveway. The defect in the pipe was caused by Geidel's improper backfill and compaction.

[¶ 4.] As the general contractor, Reyelts attempted to fix the defects. Reyelts spent $18,712.32 between October 1993 and February 1995 repairing the problems caused by the cracked sewer pipe and the defective excavation work performed by Geidel. Notwithstanding those repairs, new problems began to appear in the basement, in the patio, and in the garage floor and foundation.

[¶ 5.] Geidel's liability insurance company ultimately agreed to reimburse Reyelts for the initial repairs. In return, Wayne Krause and Reyelts signed a release in favor of Geidel. The release provided:

> Reyelts Construction and *Wayne Krause* ... hereby release and discharge Melvin Geidel Excavation ... *from any and all claims,* demands, damage, lawsuits, and causes of action *arising from Melvin Geidel Excavation's work* ... which include:
> 1) A hole in the sewage pipe, which was back filled by Melvin Geidel Excavation ... and
> 2) Improper final grading north side of the garage....

(emphasis added). Kathy witnessed the release, but she did not sign it in her individual capacity.

[¶ 6.] After receiving the release, Geidel's insurer paid Reyelts for the repair work Reyelts performed. On the same day the release was signed, the Krauses entered into a separate contract in which Reyelts agreed to correct the new problems. The new repairs specifically included sealing a concrete wall, constructing two swales outside the west side of the garage, replacing a concrete section of the basement floor, monitoring a garage door for repair, installing drain tile, and inspecting for water after the tile was installed. Except for the replacement of a portion of the basement floor, Reyelts completed this additional work.[1]

[¶ 7.] Even after Reyelts completed these additional repairs, Krauses continued to experience problems. Krauses claim that the following "additional" problems arose: cracking and heaving of the concrete in the basement; cracking of the concrete driveway; cracking of the south and west foundation walls of the garage; settling and cracking of the concrete patio;

---

1. It is alleged that the concrete floor was not replaced because Krauses had not paid Reyelts for the swales.

pooling of water in the garage; cracking in the sheetrock; and doors not closing properly.

[¶ 8.] These latest problems were not fully repaired by Reyelts. Therefore, Krauses hired Ron Huntley (Huntley), a concrete contractor, to correct them. During those repairs, Huntley noticed more construction defects. Two of those defects included a void of at least four inches between the concrete and the fill in the basement, and a failure to construct a required footing.

[¶ 9.] Krauses sued Reyelts claiming negligence, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of contract, and fraud. Reyelts raised the affirmative defense of release. Reyelts claimed that the release of Geidel (the subcontractor) released Reyelts (the general contractor). The trial court agreed and granted Reyelts's motion for summary judgment. Krauses appeal.

## STANDARD OF REVIEW

[¶ 10.] Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Jorgenson v. Vener*, 2002 SD 20, ¶ 9, 640 N.W.2d 485, 487 (internal citations omitted).

[¶ 11.] The effect of the release is the dispositive issue in this appeal. Because Wayne signed the release and Kathy only witnessed it, we consider Wayne and Kathy's claims separately.

## DECISION

[¶ 12.] **1. Whether Wayne's release of Geidel (the agent/subcontractor) released Reyelts (the principal/contractor).**

[¶ 13.] Wayne notes that, on its face, the release only referred to Geidel. Wayne also submitted an affidavit indicating that the release was intended to release only Geidel, not Reyelts. Wayne points out that we have previously held that the parties' intent governs the scope of a release. *Maryland Cas. Co. v. Delzer*, 283 N.W.2d 244, 248 (S.D.1979).

[¶ 14.] Reyelts, however, contends that Wayne's intent is irrelevant. Reyelts argues that even if Wayne did not intend to release Reyelts, a release of the agent/subcontractor also releases any vicarious liability claim against the principal/general contractor. Reyelts therefore claims that Wayne's suit is barred by the release.

[¶ 15.] In Estate of *Williams v. Vandeberg*, 2000 SD 155, 620 N.W.2d 187, we considered a release that attempted to *expressly* reserve a vicarious liability claim against the principal while releasing the agent. We acknowledged a split of authority on this issue. After considering both views, we held that "a release of an agent is a release of the principal even when the release contains an express reservation and where the claim is premised on the single act of the agent." *Id.* at ¶ 15, 620 N.W.2d at 191. Therefore, Reyelts is correct that even if Wayne did not intend to release his vicarious liability claim against Reyelts, the language in *Williams* does not permit the parties' intent to override the release of the vicarious liability claims.

[¶ 16.] Wayne, however, argues that *Williams* should not apply to a case involving contractual liability. Wayne contends that *Williams* was only concerned with

controlling circuitous litigation in tort cases, and therefore, *Williams* should not apply to a case principally involving a contract. We disagree.

[¶ 17.] *Williams* involved a wrongful death action resulting from ·a car accident. The estate of Williams brought suit against the other driver. As a part of a settlement between the estate and the driver's insurance carrier, the estate executed a release of all claims against the driver. However, because that release contained an express reservation of the right to sue the driver's employer, the estate contended that it could sue the employer on a vicarious liability theory. We disagreed, holding that a release of the agent barred recovery of all claims arising out of the agent's conduct. *Id.* at ¶ 9 and ¶ 15, 620 N.W.2d at 190, 191.

[¶ 18.] Significantly, our decision in *Williams* was not based upon the law of torts or the law of contribution among joint tortfeasors. Rather, our decision was premised on the law of agency and vicarious liability. *Id.* at ¶ 15, 620 N.W.2d at 191. Like the situation in *Williams,* Krauses seek to impose a *vicarious liability* claim upon a principal for the conduct of an agent that had been previously released. Because both cases involved vicarious liability claims against a principal, *Williams* applies.

■ [¶ 19.] In applying the *Williams* rule, we start by noting that Geidel was hired by Reyelts to perform the excavation work. Therefore, any liability of Reyelts arising from Geidel's work is premised on Reyelts's vicarious liability. The release, however, clearly stated that Wayne re-·leased Geidel from "any and all claims" arising from Geidel's work. Therefore, under *Williams,* the trial court properly held that the release of Geidel bars Wayne from bringing a vicarious liability claim against Reyelts for Geidel's defective work.

[¶ 20.] The rule in *Williams* does, however, only apply to claims arising out of the original acts of the agent. We emphasized in *Williams* that "all" claims at issue arose out of the agent's acts. *See id.* at ¶ 9 and ¶ 15, 620 N.W.2d at 190, 191. Therefore, we must next determine whether all of Krauses' current claims arose out of Geidel's work, or whether some claims were independent of Geidel's work.

[¶ 21.] Reyelts submitted an affidavit claiming that all current problems stemmed from and related back to the excavation work of Geidel. Wayne, however, disagreed arguing that there were numerous, substantial defects that were unrelated to the work performed by Geidel. Wayne alleged that unrelated defects included: cracks in the concrete basement; cracks in the concrete driveway; cracks in the south and west foundation walls of the garage; cracks and settled concrete in the patio; pooled water in the garage; cracks in the sheetrock; and doors that would not close.

■ [¶ 22.] We acknowledge that many of these claims appear to arise out of Geidel's work. Wayne, however, relies on a deposition in which he was asked, "[i]s it your contention that the problems that you're continuing to have go back to the problems in the original Geidel construction?" In response Wayne only conceded that part of the current problems arose out of Geidel's work. Wayne replied, "[p]*art* of those problems, yes . . . ." (emphasis added). Additionally, in resisting summary judgment, Wayne pointed out that Huntley discovered a required footing was not even constructed by Reyelts. The record finally reflects that as much as $93,000 in additional work is now claimed necessary for repairs. Viewing all of the evidence most favorably to the non-moving party, Wayne has raised material issues of disputed fact concerning the cause or source of some current problems. Therefore, we remand for the trial court to

consider which, if any, of Wayne's vicarious liability claims are barred because they arose out of Geidel's work, and which, if any, of Wayne's other claims may be pursued because they do not arise out of Geidel's work.[2]

### [¶ 23.] 2. Whether Kathy Krause is bound by the release.

[¶ 24.] The release only provided that "Wayne Krause" released Geidel. Kathy testified that she did not intend to release anyone by witnessing the release. Krauses argue that because Kathy only signed the release as a witness, she is not bound by it. Krauses argue that a husband's execution of a release is not, in and of itself, binding on a wife.

[¶ 25.] Reyelts does not dispute that Kathy did not intend to release Reyelts. Instead, Reyelts claims that Kathy is bound by Wayne's release because Wayne had actual or ostensible authority[3] to bind Kathy.

[¶ 26.] The trial court did not specifically rule on this issue. The trial court's decision dismissing Kathy's claims because of the release did, however, necessarily determine this issue by implication. Because this case must be remanded, we provide some guidance on the issue.[4]

[¶ 27.] We note that "a marital relationship alone does not constitute a husband an agent of his wife." *Bauer v. Graner*, 266 N.W.2d 88, 95 (N.D.1978). In general, "one who is not a party to a contract is not bound by the contract, and this general rule has been applied to hold that one spouse's signature on a contract does not bind a nonsigning spouse."

*Poarch v. Alfa Mut. Ins. Co.*, 799 So.2d 949, 955 (Ala.Civ.App.2000).

[¶ 28.] Although Reyelts argues that Wayne had actual or ostensible authority to bind Kathy, the determination of that question generally is a question of fact for the jury. *Bruins v. Anderson*, 73 S.D. 620, 627, 47 N.W.2d 493, 496 (1951). We therefore decline to accept Reyelts's argument that Kathy is bound, as a matter of law, by her husband's execution of the release. The trial court should resolve this issue of fact on remand.

### CONCLUSION

[¶ 29.] By operation of law, Wayne released Reyelts for all vicarious liability claims arising from Geidel's work. As a result, Wayne may only sue Reyelts for those defects that did not arise out of Geidel's work. The trial court must resolve the factual issues concerning the cause of the current defects. Factual issues also exist regarding Wayne's authority to bind Kathy on the release. Kathy may maintain her action against Reyelts on all claims unless she was bound by the release. If Kathy is bound by the release, she may only sue Reyelts for those defects that did not arise out of Geidel's work.

[¶ 30.] Affirmed in part, reversed in part, and remanded.

[¶ 31.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.

2. Wayne also argues that there was no consideration for the release, and therefore, the release is not an enforceable contract. SDCL 20–7–10, however, provides that an obligation may be released in writing, with or without new consideration. *See Maryland Cas. Co.*, 283 N.W.2d at 248 (stating that under SDCL 20–7–10, an obligation may be released in writing without new consideration).

3. SDCL 59–3–2 provides that "[a]ctual authority is such as a principal intentionally

confers upon the agent, or intentionally or by want of ordinary care, allows the agent to believe himself to possess." SDCL 59–3–3 provides that "[o]stensible authority is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess."

4. We do not consider other legal theories that may bind Kathy.